Filed 11/3/21  In re A.J. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.J., et al., Persons Coming Under the Juvenile Court Law. | B309448 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.M.,<br><br>        Defendant and Appellant. | Los Angeles County Super. Ct. Nos. 20LJJP00060B, 20LJJP00060C |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore of the Juvenile Court.  Dismissed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Mother appeals from the juvenile court's jurisdictional finding that mother's history of substance abuse and current abuse of alcohol and marijuana placed her twin girls (born June 2017) at risk of serious physical harm under Welfare and Institutions Code section 300, subdivision (b)(1)[1] and dispositional order requiring mother to participate in a comprehensive drug and alcohol program.  Because the juvenile court has since terminated its jurisdiction over the twins, and the jurisdictional findings are not the basis of any current order adverse to mother, we dismiss the appeal as moot.

## BACKGROUND

1. ***Events leading to filing of section 300 petition***

Mother's and father's twin daughters A.J. and E.J. were declared dependents of the juvenile court on November 24, 2020, under section 300, subdivisions (a), (b), and (j).  The juvenile court sustained allegations in an amended petition that the twins were at risk of physical and emotional harm based on father's violence against mother—including shooting her in May 2018 while she was at home with the children—and mother's failure to protect the children; father's unresolved history of illicit drug use; and mother's history of substance abuse and current abuse of alcohol and marijuana.  Father is not a party to this appeal.

---

[1]     Statutory references are to the Welfare and Institutions Code.

2

Mother challenges the jurisdictional finding based on her substance abuse. She does not challenge the jurisdictional findings based on father's conduct or her own failure to protect the children from father's conduct.

The family came to the Department's attention in late December 2019 when mother called the Department's hotline to ask for help with her teenage daughter M.C.'s behavior.[2] The Department investigated. M.C. had run away from home on December 9, 2019 (staying with friends and relatives), after mother told M.C. she did not need to live there if she couldn't follow the rules.[3] M.C. returned December 26, 2019. M.C. also had run away two months earlier, on Halloween, from her father S.C.'s home in Las Vegas after having lived with him and his girlfriend for five months.

Mother revealed, and M.C. later confirmed, that in May 2018 father had fired a gun into her house and shot her while the twins and M.C. were inside in their rooms. Mother admitted she and father had been in a "domestic violence relationship," and father used drugs.[4] A judgment with custody order,

---

[2]    M.C. is the twins' half-sibling (born January 2005). Neither she nor her father are parties to this appeal.

[3]    Mother had learned M.C. received three F's and smashed M.C.'s cellphone.

[4]    Father has several criminal convictions. He was arrested after the shooting incident with mother and remained incarcerated. During the Department's investigation, father denied having shot mother but admitted to a history of substance abuse.

3

dated April 13, 2018, granted mother sole physical and legal custody of the twins and father supervised visitation at paternal grandmother's home.

Mother also admitted she had become depressed when her mother died and "drank alcohol a lot." She told the social worker she had a glass of wine every night, but denied using drugs. She clarified she drank wine to relax rather than take medication that made her sleepy. She tested positive for marijuana on January 23, 2020; her urine sample was "dilute."

The twins, age two at the time, appeared comfortable in mother's home and had no signs of neglect. Their daycare provider had no concerns about mother. Nevertheless, the Department was concerned about the young children needing "constant care and sober supervision," and their "expos[ure] to the discord between" mother and M.C.

On January 29, 2020, the Department filed a juvenile dependency petition on behalf of all three children alleging mother's history of substance abuse and current use of alcohol and marijuana interfered with her ability to care for the children and endangered them. The petition also included allegations concerning mother's mental and emotional problems and her exclusion of M.C. from the home without making a plan for her care and supervision. At the detention hearing, the juvenile court released A.J. and E.J. to mother, but detained them from father.[5]

---

[5] The court released M.C. to both parents. On February 18, 2020, she was detained and held at juvenile hall for violating the terms of an earlier probation. The juvenile delinquency court released M.C. to S.C.

## 2.    *Continued investigation*

The Department's jurisdiction/disposition report included the results of its continued investigation.  M.C. denied mother had a substance abuse problem.  She confirmed mother would have " 'a couple of glasses' " of wine per day, but M.C. said mother hadn't " 'been drinking anything' " since the dependency case opened.  She then said that, when mother had money to buy wine, she would have " 'a cup every night before she goes to sleep' " after putting the twins to bed.  M.C. also confirmed mother "used to smoke weed but since the case started she stopped."  M.C. said mother did not smoke around her or the twins, but sometimes M.C. could " 'smell it.' "  She thought mother smoked at night when the twins were asleep.

During an interview on February 18, 2020, mother said she " 'occasionally' " has wine when she goes out with friends or on the weekend.  She told the social worker she had one or two glasses of wine, three times a week.  Mother explained that, after she had fed and put the twins to bed at night, she might " 'choose to have . . . some wine.' "  She said she last drank wine two days earlier and had not used marijuana in five months, when she had some edibles.

When asked about her drug testing schedule, mother said she "kept forgetting to call the testing hotline each day" to check if she had to drug test.  As to her January 23, 2020 positive marijuana test result, mother said she had last used edibles six months earlier, and her dilute result was due to drinking water.  The social worker suggested mother set a reminder on her phone to call about testing and limit her water intake before a test.

5

**3.** *Amended petition and reports pending adjudication*

On March 13, 2020, the Department filed a first amended petition to add allegations about the domestic violence between mother and father and father's drug abuse. Due to the COVID-19 pandemic, the adjudication hearing was continued several times until November 2020.

In the interim, the Department reported mother was attending a parenting program, taking an online domestic violence class, and participating in counseling. She had not drug tested consistently, however. Mother had missed eight tests between March 2020 and August 3, 2020, tested negative at one test in March and one test in June, and had dilute results on June 15 and July 1, 2020.

In October 2020, the Department's report noted mother had been partially compliant in her family maintenance case due to the pandemic and resulting lack of access to services. Mother missed her drug tests on August 18 and September 21, 2020, had a dilute test on August 26, 2020, and tested negative on October 2, 2020.

In its report filed before the November 2020 adjudication hearing, the Department informed the court that mother had completed her parenting program and a nonapproved online domestic violence program. Mother also had begun to participate in family preservation services in October. Mother, however, was " 'adamant that she does not have a substance abuse issue.' " She told the Department she " 'is allowed to drink when she wants as alcohol is legal.' " The report noted mother admitted she did not always call in for her drug testing and claimed she did not know a missed test was considered a positive test. She

6

was resistant to suggestions to improve her " 'calling in rate.' " Mother missed her October 20 and November 6 drug tests.

The Department was concerned that, if mother did not adequately address domestic violence issues, the cycle likely would continue and lead mother to engage in another domestic violence relationship. The Department also was concerned that mother's yet-to-be addressed substance abuse issues impacted her ability "to be fully present for her children and address the trauma and underlying issues for why the family came to the attention of the Court." The Department noted mother's failure to address her substance abuse issues was of "further concern" given M.C.'s behavioral issues and the twins' delays. At this time, M.C. again was living with mother.[6]

### 4. *Adjudication hearing*

The juvenile court convened the combined jurisdiction and disposition hearing for A.J. and E.J. on November 23 and 24, 2020.[7] Mother testified at the hearing. She admitted she occasionally drank alcohol, but said she had not had any since the case opened. She did not believe she had a substance abuse issue. Mother said she drank socially before the case opened, usually wine at the end of the day after the twins were in bed.

---

[6] In August, S.C. had brought M.C. to mother's for a visit. M.C. left mother's home for a few days, but returned. S.C. no longer wanted M.C. to live with him.

[7] Because M.C. had left mother's home again, and her whereabouts were unknown, the juvenile court continued M.C.'s portion of the adjudication hearing. It also held in abeyance the allegations under section 300, subdivision (j) as to A.J. and E.J. based on mother's conduct toward M.C.

Mother testified she did not drink every day, but "here and there," if she felt like she might want some wine with dinner or while watching a movie. She said she did not drink while caring for the children. She clarified she drinks wine with dinner when the twins are sleeping but is the only adult home. Mother denied smoking marijuana. She said she ate a marijuana brownie when her cousin opened a dispensary about a month before the Department became involved, but had not had any edibles since then.

Mother admitted she missed drug tests. She said the missed tests were due to the testing facility's closure for about two months during the pandemic lockdown, but then admitted she did not call in daily as ordered. Rather, she called in when she remembered or if she had time. Mother said she had been calling daily since August or September after following a suggestion to call the night before to see if she had to test the next day.

Mother testified she learned father was using drugs when she was pregnant. She also described the shooting incident: after mother did not allow father to see the twins, who were in bed, he fired a gun from outside the house through mother's window and shot into the air on the side of the house.

Mother's counsel argued the court should dismiss the substance abuse allegations as mother had had only one low-level positive test for marijuana at the beginning of the case. Counsel acknowledged mother had missed some testing, but noted mother had her own business and was busy providing for her family. Counsel argued it was "not unusual or neglectful for a single mother to enjoy a glass of wine after her children are asleep every now and then, and if mother really had an issue with substances

[she would not be] regularly communicating with the Department and willing to test."

Minors' counsel noted discrepancies between M.C.'s and mother's statements about whether mother had smoked marijuana before the dependency case opened and argued mother's credibility was at issue. The Department's counsel noted mother had missed 16 drug tests despite the Department and family preservation having attempted to help mother remember to call.

The court sustained the substance abuse allegations against mother. The court noted "[p]art of the condition of release of the children to the mother was ongoing drug testing so that the court could ensure that she was not continuing to abuse substances." The court described mother's testimony about her testing as "quite telling to the court when she basically . . . indicated that she tested when she had time or when it was convenient . . . for her to do so." The court found mother's attitude toward testing showed she did not understand the reasons why the conditions were put in place for the children to remain in her care, demonstrating a nexus between her substance abuse and risk of harm to the children. The court also sustained the domestic violence allegations against both parents and the drug abuse allegations against father, but dismissed the allegations relating to mother's mental health.

At disposition, the court ordered mother to complete a six-month minimum full drug and alcohol program with weekly testing and a 12-step program;[8] participate in a domestic violence

---

[8]     Mother objected through counsel to this component of her case plan.

9

support group for victims; and attend individual counseling. The court noted mother had completed a parenting course. The twins were to remain in mother's custody. Mother timely appealed.

## 5. *Post-appeal events*

On May 24, 2021, during the pendency of this appeal, the juvenile court found "those conditions which would justify the initial assumption of jurisdiction [over A.J. and E.J.] . . . no longer exist and are not likely to exist if supervision is withdrawn and the Court terminates [its] jurisdiction." On May 27, 2021, the juvenile court terminated its jurisdiction over A.J. and E.J. and issued a final juvenile custody order granting mother sole legal and physical custody of the twins and father monitored visits—only at the paternal grandmother's home—after his release from custody.[9] The order does not require mother to participate in any services.

On September 9, 2021, we asked the parties to provide additional briefing as to why this appeal should not be dismissed as moot, and whether mother was still required to participate in a drug and alcohol program as ordered on November 24, 2020, given the court's termination of its jurisdiction. The Department and mother filed responsive letter briefs. We permitted mother to file a request for judicial notice of documents filed post-appeal in the current dependency matter and in M.C.'s pending dependency matter and permitted the Department to file a letter brief in response.

---

[9] On September 9, 2021, we granted the Department's request for judicial notice of the juvenile court's May 24 and 27, 2021 minute orders and May 27, 2021 juvenile custody order.

We now take judicial notice of the Department's second amended petition filed February 11, 2021, and the juvenile court's May 17, 2021 jurisdictional and dispositional order, both filed in M.C.'s pending dependency matter. (Evid. Code, § 452, subd. (d).) Mother contends the orders she challenges in this appeal affect the May 17, 2021 orders as to M.C., entered after the juvenile court partially sustained the second amended petition. We decline to take judicial notice of the Department's February 16, 2021 detention report filed in M.C.'s matter, however, as it is irrelevant to whether mother's appeal from the jurisdictional finding and dispositional order in A.J. and E.J.'s case is moot. We similarly decline to take judicial notice of the Department's May 5, 2021 status review report of A.J. and E.J.'s case—it is irrelevant considering the court has terminated its jurisdiction over them.

## DISCUSSION

"As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceeding moot." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) "[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.) Dismissal of a dependency appeal for mootness following termination of jurisdiction "is not automatic," however, "but 'must be decided on a case-by-case basis.'" (*C.C.*, at p. 1488.) A reviewing court may exercise its discretion to reach the merits of a challenged jurisdictional finding if the finding: (1) "serves as the basis for dispositional orders that are also challenged on appeal"; (2) "could be prejudicial to the appellant or could impact the current or

11

any future dependency proceedings"; or (3) "could have consequences for the appellant beyond jurisdiction." (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1150; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Here, mother challenges both the jurisdictional finding that she was a substance abuser and the dispositional order requiring her to complete a full drug and alcohol program. We can give mother no effective relief. Mother did not challenge the court's jurisdictional findings based on her failure to protect or on father's conduct; thus, a reversal of the substance abuse finding would not result in a reversal of the juvenile court's assertion of jurisdiction over A.J. and E.J. (*In re I.J.* (2013) 56 Cal.4th 766, 773 [" 'reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence' "; it " 'need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence' "].) Nor would reversal of the substance abuse finding mandate reversal of the challenged disposition order. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 (*I.A.*) ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].) Moreover, because the juvenile court terminated its jurisdiction over the twins and entered a final juvenile custody order, the November 24, 2020 disposition order has been superseded and no longer adversely affects mother. (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1165 [juvenile court "exit order 'shall be a final judgment and shall remain

12

in effect after [the juvenile court's] jurisdiction is terminated' "].) A reversal of that order thus would have no practical effect.

Mother nevertheless contends the substance abuse finding "could have damaging consequences for [her] in any family law matter as related to custody and visitation." Mother's contention is highly speculative. The juvenile court entered a juvenile custody order granting *mother* sole legal and physical custody of A.J. and E.J. and limited father to monitored visitation. That order is virtually identical to the custody order entered in 2018. Mother's custody and visitation rights, therefore, have not been hampered by the earlier substance abuse finding. (See § 362.4, subd. (b) [juvenile court custody and visitation orders "shall continue until modified or terminated by a subsequent order of the superior court"].) Thus, even if the jurisdictional finding is unfounded, mother faces "no threatened prejudice" from it. (*I.A., supra*, 201 Cal.App.4th at p. 1495; cf. *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1546, 1548 [parent's appeal not rendered moot by termination of jurisdiction where restrictions to parent's custody and visitation in juvenile custody order were based on challenged jurisdictional finding].)

In her supplemental brief, mother also contends the court's substance abuse finding continues to adversely affect her in *M.C.'s* dependency case. She argues the juvenile court again ordered her to participate in a "totally unwarranted" comprehensive drug and alcohol program as part of her case plan in M.C.'s matter based on its earlier jurisdictional finding and dispositional order in the twins' matter. As the Department contends, a reversal of the November 24, 2020 order, which is no longer in effect, will not practically affect the case plan implemented in M.C.'s matter on May 17, 2021.

13

The juvenile court separately adjudicated M.C. a dependent based on a second amended petition filed after the court declared A.J. and E.J. dependents. As mother notes, the second amended petition includes an allegation about mother's mental health—dismissed from the first amended petition—and includes the same substance abuse allegations the juvenile court sustained as one of the bases for exercising its jurisdiction over the twins. According to the juvenile court's May 17, 2021 minute order, the court dismissed those allegations in M.C.'s case, however. It sustained the petition concerning M.C., as to mother, based only on the allegations it had continued at the adjudication hearing for the twins—that mother had excluded M.C. from the home without providing for her supervision.[10]

Mother speculates the court's disposition order in M.C.'s case requiring mother to participate in a full drug and alcohol program, 12-step program, and drug testing could have been based only on the court's earlier jurisdictional finding and dispositional order that she currently challenges. She thus argues the issues she presents in this appeal are not moot because they have "infect[ed] the outcome of subsequent proceedings." (*In re Dylan T.* (1998) 65 Cal.App.4th 765, 769, cited by mother.)

We disagree. First, even if we were to reverse the jurisdictional finding, mother's conduct and circumstances relating to the underlying substance abuse allegations would still be in the Department's reports and before the juvenile court.

_____

[10]  As mother notes, the court also sustained allegations added to the second amended petition against M.C.'s father S.C.

14

(See, e.g., *In re Madison S.* (2017) 15 Cal.App.5th 308, 329-330 [substance of a spanking allegation (only allegation supporting parent being an active perpetrator of abuse) "would almost certainly be available in any future dependency or family court proceeding, regardless of any determination on our part as to whether it formed an independent basis for juvenile court jurisdiction"].) Moreover, the court's "past jurisdictional finding" would have been "entitled to no weight in establishing jurisdiction, even assuming it was admissible for that purpose. Instead, the agency [would have been] required to demonstrate jurisdiction by presenting evidence of then current circumstances placing the minor at risk. Other relevant dependency findings similarly would require evidence of present detriment, based on the then prevailing circumstances of parent and child." (*I.A., supra*, 201 Cal.App.4th at p. 1495.) Thus, the challenged substance abuse finding and related dispositional orders *alone* could not have led to the court's findings and orders entered *six months later* in M.C.'s case. Therefore, their reversal would not oblige us to reverse the May 2021 order requiring mother to attend a drug and alcohol program.[11] That order was based on the current circumstances of mother and M.C.—a teenager

---

[11] In her letter brief, mother nevertheless urges us to "fashion a remedy to immediately relieve her of any further obligations to participate in any drug and alcohol program imposed" in M.C.'s matter. The propriety of the juvenile court's disposition order in M.C.'s case is not currently before us. Mother's appeal from that order—appellate case number B313248—is pending. We will address mother's contentions as to why the order was an abuse of discretion *under those circumstances* when that case is ready for our review.

with whom mother had a difficult relationship—which necessarily included events that unfolded *after* the juvenile court made its November 2020 orders as to mother's then three-year-old twins.  Accordingly, there is no continuing adverse order against mother dependent upon the validity of the November 2020 jurisdictional findings or dispositional order.

As "there remains no effective relief we could give [mother] beyond" what she already has obtained, we decline to exercise our discretion to review the challenged jurisdictional finding and dispositional order.  (*In re N.S., supra*, 245 Cal.App.4th at p. 62.)

### DISPOSITION

The appeal is dismissed as moot.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.


We concur:




LAVIN, Acting P. J.                    MATTHEWS, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16